# EXHIBIT A

2014 WL 2763648
United States District Court,
E.D. Michigan,
Southern Division.

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST, Plaintiff,
v.
TRINA SOLAR LIMITED, et al., Defendants.

No. 13–14241.
|
Signed June 18, 2014.

**Attorneys and Law Firms**

W. Gordon Dobie, William C. O'Neil, Derek J. Sarafa, Winston & Strawn LLP, Chicago, IL, for Plaintiff.

Daniel Edward Laytin, James Robert Hileman, Leonid E. Feller, Kirkland and Ellis LLP, Chicago, IL, Jonathan C. Sanders, Simpson Thacher & Bartlett LLP, Palo Alto, CA, Karen M. Gift, Matthew J. Reilly, Simpson Thacher & Bartlett LLP, Washington, DC, Patrick G. Seyferth, Susan M. McKeever, Bush, Seyferth & Paige, Catherine T. Dobrowitsky, Rivenoak Law Group, P.C., Troy, MI, Jerome S. Fortinsky, Shearman & Sterling, New York, NY, for Defendants.

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO TRANSFER**

ROBERT H. CLELAND, District Judge.

*1 On October 4, 2013, Plaintiff Energy Conversion Devices Liquidation Trust (ECD), the remnants of a bankrupt solar panel manufacturer, sued Chinese solar manufacturers and their American subsidiaries, Trina Solar Limited, Trina Solar (U.S.), Inc., Yingli Green Energy Holding Company Limited, Yingli Green Energy Americas Inc., Suntech Power Holdings Co., Ltd., and Suntech America, Inc., alleging antitrust violations under the Sherman Act and state law. Plaintiff now moves to transfer this action to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404. The motion has been fully briefed, and the court concludes a hearing is not necessary. See E.D. Mich. LR 7.1(e) (2). For the reasons stated below, the court will deny the motion.

## I. BACKGROUND

Before filing suit in this court, on October 11, 2012, Solyndra, LLC—another bankrupt solar panel manufacturer also represented by Plaintiff's counsel—filed a similar action against Defendants in the Northern District of California. *Solyndra Residual Trust v. Suntech Power Holdings Co.,* No. 12–05272 (N.D.Cal. Oct. 11, 2012). On March 8, 2013, Defendants moved to dismiss Solyndra's amended complaint. *Solyndra,* Dkt. # 74. While the California motion to dismiss was pending, Plaintiff filed the present action in this court. On March 31, 2014, the California court denied Defendants' motion to dismiss. *Solyndra,* Dkt. # 87. Shortly thereafter, Plaintiff filed the pending motion to transfer.

## II. STANDARD

"The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d 531, 538 (6th Cir.2002)." For civil actions, venue is proper in a judicial district where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "any defendant is subject to the court's personal jurisdiction with respect to such action," if "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b).

When a case is brought in the correct venue, a district court may still transfer it "to any other district or division where it might have been brought," when doing so serves "the convenience of parties and witnesses" and is "in the interest of justice." 28 U .S.C. § 1404(a); *see also United States v. P.J. Dick Inc .,* 79 F.Supp.2d 803, 806 (E.D.Mich.2000). Courts are to weigh these considerations on an "individualized, case-by-case" basis. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). "As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH Am. LLC,* 574 F.3d 315, 320 (6th Cir.2009) (quoting *Phelps v McClellan,* 30 F.3d 658, 663 (6th Cir.1994)). The moving party bears the burden of

Energy Conversion Devices Liquidation Trust v. Trina Solar Ltd., Not Reported in...
2014 WL 2763648, 2014-1 Trade Cases P 78,814

demonstrating by a preponderance of the evidence that, "in light of these factors, 'fairness and practicality strongly favor the forum to which transfer is sought.' " *Amphion, Inc v. Buckeye Elec. Co.*, 285 F.Supp.2d 943, 946 (E.D.Mich.2003) (quoting *Thomas v. Home Depot U.S.A., Inc.*, 131 F.Supp.2d 934, 936 (E.D.Mich.2001)).

## III. DISCUSSION

**\*2** It is well established that, " § 1404(a) should not create or multiply opportunities for forum shopping." *Ferens v. John Deere Co.*, 494 U.S. 516, 523, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). According to Defendants, "[t]his motion presents the unusual case in which Plaintiff seeks a transfer from its own chosen venue. The procedural history ... makes Plaintiff's purpose clear—Plaintiff seeks to transfer this case to a court it now views as more favorable." (Dkt. # 28, Pg. ID 178.) The court agrees.

"[F]orum shopping looms as the principal concern where plaintiffs seek transfer." *Al Shimari v. CACI Int'l, Inc.*, 933 F.Supp.2d 793, 799 (E.D.Va.2013). As such, a motion for a change of venue "is not ordinarily granted at the request of the party who chose the forum in the first place." [1] *Grossman v. Schwarz*, 678 F.Supp. 440, 443 (S.D.N.Y.1988); *see also Spar, Inc. v. Info Res., Inc.*, 956 F.2d 392, 395 (2d Cir.1992) ( "Certainly, 'a plaintiff already has the option of shopping for a forum with the most favorable law," *[Ferens,* 494 U.S. at 527], before it makes a decision to initiate an action in a particular district. Once a plaintiff has commenced its action, however, its opportunity to search for a more conducive forum ordinarily is concluded."). Plaintiff argues in its reply that it does not seek to forum shop but instead "to avoid the enormous duplication of discovery, motion practice, and trial; to avoid the unnecessarily [sic] burden on the judicial system (and this Court) in having two identical actions pending in different jurisdictions; to avoid inconsistent results; and to avoid the expenditure of litigation costs by two bankrupt companies." (Dkt. # 32, Pg. ID 202.) Yet Plaintiff created the problems it says the parallel litigation creates. Plaintiff chose to file the present action in this court approximately one year after Solyndra LLC initiated its suit in California. It is no surprise that *Solyndra* is further along in the litigation process than the present action. Similarly, Plaintiff should have considered the possibility of inconsistent results and the expenditure of litigation costs when it initiated the instant action in this court.

[1] Of course, "the right to a transfer under 28 U.S.C. § 1404(a) is available to a plaintiff as well as a defendant. A plaintiff is not bound by his choice of forums, if he later discovers that there are good reasons for transfer." *Smith v. ABN AMRO Mortgage Grp. Inc.*, 434 F. App'x 454, 465 (6th Cir.2011) (citations and brackets omitted). However, as discussed herein, Plaintiff has not demonstrated that it "discovered" any "good reasons" for transfer.

It is of some interest that Plaintiff's transfer motion was filed only about two weeks after it attained a favorable result in the Northern District of California. Plaintiff argues that when it filed the complaint in early 2013 it had significant connections to Michigan but now has little contact with Michigan and thus that its motion simply reflects the "drastic changes" to its business stemming from liquidation. (Dkt. # 32, Pg. ID 202.) However, as Plaintiff's title—Energy Conversion Devices Liquidation Trust—suggests, it had already begun the liquidation process when it initiated suit and was the entity in the best position to predict its future circumstances. Indeed, as Defendants point out, "[a]ll of the facts that Plaintiff cites in support of its motion to transfer were present and known when it filed its Complaint six months ago. The sole intervening change ... is that Defendants' motion to dismiss the Northern District of California action was denied." (Dkt. # 28, Pg. ID 176.) Despite its protestations, the timing of Plaintiff's transfer motion leads the court to suspect that it filed its transfer motion in attempt to forum shop. *Cf. Williams Advanced Materials, Inc. v. Target Tech. Co.*, No. 03–CV–276–A, 2007 WL 2245886, at \*6 (W.D.N.Y. Aug.1, 2007) ("While the motion is being made under the pretense that it is more convenient for the moving parties, the true motivation behind it is 'judge-shopping.' "). Plaintiff's "obviously improper motivations provide an adequate basis for denying the motion [to transfer] in its entirety." *Id.* at \*6; *see also Cohen v. Waxman*, 421 F. App'x 801, 803–04 (10th Cir.2010) ("Only now that [plaintiff] knows that he will lose in that forum does he seek another.... Only a neutral reason—one not designed to favor one party over another—can justify a transfer."); *In re New York Trap Rock Corp.*, 158 B.R. 574, 577 (S.D.N.Y.1993) ("Forum shopping efforts pursued by awaiting a decision relevant to the merits and then bypassing or filing a motion to transfer should not be rewarded with success."); *Bobosky v. Adidas AG*, No. CV 10–630–PK, 2010 WL 4853295, at \*6 (D.Or. Oct.8, 2010) ("[P]laintiffs' motion to transfer appears motivated by forum shopping, not by any changed circumstances warranting a transfer."). Nonetheless,

Case 2:20-cv-12933-GAD-KGA ECF No. 30-1, PageID.331 Filed 11/02/21 Page 4 of 31

Energy Conversion Devices Liquidation Trust v. Trina Solar Ltd., Not Reported in...
2014 WL 2763648, 2014-1 Trade Cases P 78,814

the court will briefly address whether a transfer would serve "the convenience of parties and witnesses" and whether it would be "in the interest of justice."

**\*3** Plaintiff has not met its burden to show that the Northern District of California is a more convenient forum than the Eastern District of Michigan. To support his contention that California would be a more convenient forum for the parties and witnesses, Plaintiff makes only general statements. For example, Plaintiff argues that "because Defendants are all located in California, most of Defendants' witnesses are likely to be there." (Dkt. # 16, Pg. ID 91.) Similarly, Plaintiff says that since filing this suit, ECD has closed its office in Troy, Michigan and terminated four of five executives. Although these facts (and others asserted) may be true, Plaintiff provides no evidence to support such vague allegations and thus has not met its burden. *See, e.g., Mosby v Greyhound Lines, Inc.,* No. 06–13157, 2006 WL 3206069, at \*3 (E.D.Mich. Nov.3, 2006) (citations omitted) ("A motion to transfer will be denied upon a mere allegation that witnesses are necessary without stating who they are and what their testimony will cover."); *Electronic Transaction Network v Katz,* 734 F.Supp. 492, 501–02 (N.D.Ga.1989) (moving party must make a specific showing of inconvenience to witnesses to transfer under 28 U.S.C. § 1404(a)); *Shapiro v. Merrill Lynch & Co.,* 634 F.Supp. 587, 590 (S.D.Ohio 1986) (moving party must specify the number of witnesses that would be inconvenienced, and the severity of the inconvenience for § 1404(a) transfer).

Plaintiff also has not met its burden to show that the interest of justice favors the Northern District of California. Where a defendant seeks a transfer because the Plaintiff engaged in forum shopping when initially filing suit, courts regularly grant a defendant's transfer motion. *See, e.g., C–Mart, Inc. v Metro. Life Ins. Co.,* No. 4:13CV00052AGF, 2013 WL 2403666, at \*5 (E.D.Mich. May 31, 2013) ("[T]he Court finds that the interests of justice weigh heavily in favor of transfer because Plaintiff's choice of forum creates the perception of impermissible forum shopping."); *Lab Corp. of Am. Holdings v NLRB,* 942 F.Supp.2d 1, 5 (D.D.C.2013) (internal quotation marks omitted) ("It is not in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents ...."). Thus, by analogy, granting Plaintiff's motion for transfer would allow Plaintiff to engage in forum shopping and thereby disserve the interest of justice.

Plaintiff's motion to transfer will be denied.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiff's motion to transfer (Dkt.# 16) is DENIED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2763648, 2014-1 Trade Cases P 78,814

© 2021 Thomson Reuters. No claim to original U.S. Government Works

2013 WL 6631545
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

FLAGSTAR BANK, FSB, Plaintiff,

v.

John P. ESTRELLA, and individual d/
b/a Able Mortgage Company, Defendant.

No. 13–cv–13973.
|
Dec. 17, 2013.

**Attorneys and Law Firms**

Richard E. Segal, Richard E. Segal & Associates, P.C., West
Bloomfield, MI, for Plaintiff.

Bethany G. Stawasz, Clark Hill, PLC, Detroit, MI, for
Defendant.

*ORDER DENYING DEFENDANT'S MOTION TO
DISMISS PURSUAUNT TO RULE 12(B)(3) OF THE
FEDERAL RULES OF CIVIL PROCEDURE AND
IN THE ALTERNATIVE MOTION TO TRANSFER
VENUE PURSUANT TO 28 U.S.C. § 1404(a)*

GERSHWIN A. DRAIN, District Judge.

**I. Introduction**

**\*1** Plaintiff Flagstar Bank ("Flagstar") is a federally
chartered bank whose principle place of business is Troy,
Michigan. Defendant is John P. Estrella ("Estrella") a resident
of Massachusetts, and he does business as the Able Mortgage
Company. Plaintiff initially filed a one count Complaint for
breach of contract against Defendant in the Oakland County
Circuit Court on August 15, 2013. On September 17, 2013,
Defendant removed the case to this Court. Presently before
the Court is Defendant's Motion to Dismiss this case for
improper venue pursuant to Rule 12(b)(3) of the Federal
Rules of Civil Procedure, or in the alternative to Transfer
Venue pursuant to 28 U.S.C § 1404(a). The parties have
fully briefed the Motion. Pursuant to Local Rule 7.1(f)(2), the
Court will decide this motion on the briefs without a hearing.
For the reasons that follow, the Court DENIES Defendant's

Motion to Dismiss Pursuant to Rule 12(b)(3) and Defendant's
Motion to Transfer Pursuant to 28 U.S.C. 1404(a) [# 4].

**II. Factual Background**

In November of 2006, the parties entered into a Wholesale
Lending Broker Agreement ("the Broker Agreement"). *See*
Dkt. 1 Ex. A. Under the agreement, Defendant offered to
sell loan packages to Plaintiff. Plaintiff purchased the loans,
and later sold them to Fannie Mae, a government owned
entity that purchases mortgage loans from banks in an effort
to promote liquidity in the mortgage market. The loan did
not meet Fannie Mae's requirements and it suffered a loss.
Plaintiff had to indemnify Fannie Mae for its loss. Per the
Broker Agreement, Defendant agreed to indemnify Plaintiff
for any losses that resulted from any breach of a covenant,
warranty, or representation regarding the loan. The agreement
also required Defendant to submit to the personal jurisdiction
of the Oakland County Circuit Court and this Court.

**III. Law and Analysis**

**A. Standard of Review**

**i. Rule 12(b)(3) of the Federal Rules of Civil Procedure**
When a court considers a motion under Rule 12(b)(3), it
must draw all favorable inferences in favor of the plaintiff,
and the plaintiff bears the burden of demonstrating venue is
proper. *Audi AG & Volkswagen of America, Inc. v. Izumi*, 204
F.Supp.2d 1014, 1017 (E.D.Mich.2002). The court, however,
retains discretionary authority to transfer an action under 28
U.S.C. § 1404(a).

**ii. 28 U.S.C. § 1404(a)**
Title 28, section 1404(a) of the United States Code provides:
"For the convenience of parties and witnesses, in the interest
of justice, a district court may transfer any civil action to
any other district or division where it might have been
brought." Courts have broad discretion to transfer an action
pursuant to section 1404 to avoid unnecessary delay and
to protect parties, witnesses, and the public from undue
expenses and inconvenience. *See Van Dusen v. Barrack*, 376
U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Norwood
v. Kirkpatrick*, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789
(1955). The Supreme Court instructs that "[s]ection 1404(a) is
intended to place discretion in the district court to adjudicate

motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen,* 376 U.S. at 622).

**\*2** A transfer pursuant to § 1404(a) requires that: "(1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and witnesses' convenience." *Thomas v Home Depot, U.S.A., Inc.,* 131 F.Supp.2d 934, 936 (E.D.Mich.2001). This in turn requires the Court to consider relevant case-specific factors such as:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor,* 79 F.Supp.2d 809, 811 (E.D.Mich.2000); *see also Grand Kensington, LLC v. Burger King Corp.,* 81 F.Supp.2d 834, 836 (E.D.Mich.2000); *Helder v. Hitachi Power Tools, USA Ltd.,* 764 F.Supp. 93, 96 (E.D.Mich.1991); *Moses v. Bus. Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.1991) (holding that a "court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' ") (quoting *Stewart Organization, Inc.,* 487 U.S. at 30).

The moving party must demonstrate by a preponderance of the evidence that, in light of these factors, "fairness and practicality strongly favor the forum to which transfer is sought." *Thomas v. Home Depot U.S.A.,* Inc., 131 F.Supp.2d 934, 936 (E.D.Mich.2001). Generally, a plaintiff's choice of forum will be given deference unless the defendant makes an

appropriate showing. *See Grand Kensington,* 81 F.Supp.2d at 836 (citing *Gen. Motors Corp. v. Ignacio Lopez de Arriortua,* 948 F.Supp. 656, 668 (E.D.Mich.1996)). A transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *See Evans Tempcon, Inc. v. Index Indus., Inc.,* 778 F.Supp. 371, 377 (W.D.Mich.1990).

## B. Defendant's Motion

### i. Motion to Dismiss Pursuant to Rule 12(b)(3)

Plaintiff's Motion to dismiss for improper venue pursuant to Rule 12(b)(3) is misguided. Defendant removed this case from state court to this Court. *See* Dkt # 1. By statute, this Court is the only court to which Defendant could remove the case. 28 U.S.C. § 1441(a) (2012) (stating the district court for the district and division embracing the state case is the proper removal venue); *see Kerbo v. Southwestern Clean Fuels, Corp.,* 285 F.3d 531, 535 (6th Cir.2002). There was no other forum to which Defendant could have removed this case. Therefore, his motion under this rule fails because it is counterintuitive. Defendant entered into a contract submitting himself to this Court's personal jurisdiction, and statute designates this Court as the proper and only venue for removal purposes. Defendant's Motion to Transfer Venue under § 1404(a) is more appropriate when analyzed under the relevant factors.

### ii. Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

**\*3** As a preliminary matter, the Court finds this case could have been brought in the United States District Court for the District of Massachusetts under diversity jurisdiction. Defendant is a resident of the state of Massachusetts, Plaintiff is a business whose principle place of business is in Michigan, and the dispute is in excess of $75,000. Plaintiff argues that the Broker Agreement's governing law clause binds Defendant to argue in only this Court or the Oakland County Circuit Court. In the clause, Defendants submitted to the personal jurisdiction of this Court and the Oakland County Circuit Court, agreed Michigan law governed the matter, and agreed to a bench trial.

This is not a forum selection clause. Personal Jurisdiction is not the same issue as venue. Personal jurisdiction is a question of whether a court can exercise its authority over a party, whereas venue is a matter of choosing the proper forum in which to litigate. *Children's Legal Servs., LLC v. Shor Levin and Derita, P.C.,* 850 F.Supp.2d 673, 679 (E.D.Mich.2012). Moreover, each requires a different

2013 WL 6631545

analysis. *Id.* When determining whether venue is appropriate, the court considers where the defendant resides and where the acts or omission that gave rise to the claim occurred. 28 U.S.C. § 1391(b)(1)-(2) (2012). Personal jurisdiction can only dictate venue when there is no district in which to bring an action, and that is not an issue in this matter. *Id.* at (3). When determining personal jurisdiction, federal district courts consider whether a party has submitted to its exercise of personal jurisdiction, the long-arm statute of the of the state in which they are located, and whether their exercise of personal jurisdiction violates Due Process. *See* Fed.R.Civ.P. 4(k)(1); *Int'l Shoe Co. v. Washington,* 326 U.S. 316 (1945).

In the instant case, Defendant is not challenging the personal jurisdiction of this Court. Rather, he argues the proper forum to litigate this case is where he resides, where the loan was originated, and first reviewed by Plaintiff's employees. This argument, while valid, mischaracterizes the nature of the claim. Plaintiff seeks indemnity from the Defendant. Defendant made certain warranties about the characteristics of a loan he sold to Plaintiff. The facts that give rise to the cause of action are the negative consequences resulting from Plaintiff's transaction with Fannie Mae. Had Fannie Mae not suffered a loss, there would be no need to indemnify. Therefore, the events that gave rise to this action are the loss at Fannie Mae and their demand that Plaintiff indemnify them. Defendant's actions or omission caused Plaintiff to suffer a harm in this district.

Moreover, case specific factors do not favor transfer. *See Taylor,* 79 F.Supp.2d at 811. Defendant argues convenience of witnesses favors transfer, but the inconvenience of having to travel from Massachusetts to Michigan is not significant enough to overcome the preference for Plaintiff's choice of venue. Generally, courts do not give weight to unsupported claims that travel costs are a burden. *See Thomas,* 131 F.Supp.2d at 937. Defendant also lists six potential fact witnesses who are located in Massachusetts. Def.'s Rep. at 6. Of these witnesses, only two could have information relevant to Plaintiff's transaction with Fannie Mae. *Id.* Costs associated with these witnesses' travel can be mitigated by depositions via telephone or video conference. Defendant's argument regarding access to documentary evidence is unavailing. Plaintiff has copies of these documents. However, the Defendant does not have access to the documents Plaintiff and Fannie Mae exchanged. Pl.'s Resp. at 8. Plaintiff has these documents in its possession in Troy, Michigan. Any documents in Defendant's possession that are relevant to Plaintiff's transaction are discoverable and able to be shared electronically. Section 1404(a) requires Defendant to make a showing that a transfer outweighs the preference for plaintiff's choice of venue. Defendant has not made the required showing.

## IV. Conclusion

**\*4** For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss Pursuant to Rule 12(b)(3), and DENIES Defendant's Motion to Transfer Pursuant to 28 U.S.C. 1404(a) [# 4].

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6631545

End of Document

2021 Thomson Reuters. No claim to original U.S. Government Works

2020 WL 3071851
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Anthony OLIVER, Plaintiff,
v.
FCA US LLC, Defendant.

Case No. 19-cv-11738
|
Signed 06/10/2020

**Attorneys and Law Firms**

Anthony Oliver, Leeburg, GA, pro se.

Daniel K. Beitz, Kevin Charles Majewski, Evans Law Group,
P.C., Rochester, MI, Michael R. Williams, Bush Seyferth
PLLC, Kalamazoo, MI, for Defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO TRANSFER VENUE [#24]

Gershwin A. Drain, United States District Judge

### I. INTRODUCTION

\*1 On June 10, 2019, Plaintiff Anthony Oliver, proceeding
*pro se*, filed his Complaint against Defendant FCA US
LLC ("Defendant") alleging that his 2018 Jeep Cherokee
is defective. ECF No. 1. Plaintiff brings four claims
against Defendant, including (1) a violation of the Federal
Magnusson-Moss Warranty Act; (2) strict liability; (3) a
violation of the Michigan Consumer Protection Act, MCL §
445.903; and (4) implied warranty under Michigan tort law.
*See id.*

Presently before the Court is Plaintiff's Motion to Transfer
Venue, which was filed on September 17, 2019. ECF No. 24.
Defendant filed its Response on October 1, 2019. ECF No.
27. The Court entered a Notice of Determination of Motion
Without Oral Argument, pursuant to the Eastern District of
Michigan's Local Rule 7.1(f)(2), on October 9, 2019. ECF
No. 28. For the reasons that follow, the Court will **DENY**
Plaintiff's Motion to Transfer Venue [#24].

### II. FACTUAL BACKGROUND

The instant action stems from a roll away incident in a
Walmart parking space in Atlanta, Georgia. Plaintiff alleges
that he incurred repair costs and he lost his job as a Lyft and
Uber driver as a result of the incident. ECF No. 1, PageID.6.

In 2018, Plaintiff purportedly purchased a 2018 Jeep
Cherokee that was built and manufacture by Defendant in
Michigan. [1] *Id.* at PageID.5. In September 2019, Plaintiff
alleges that he put the vehicle in "P" for park after finding
a space at a Walmart parking lot in Atlanta, Georgia. *Id.*
He explains that despite his action, the vehicle rolled away,
hitting concrete parking dividers. *Id.*

[1]     In its Response, Defendant emphasizes that
        Plaintiff does not allege where the vehicle was
        purchased or serviced. ECF No. 27, PageID.151.

Plaintiff purports that he then "jumped in and applied the
emergency break." *Id.* Further, Plaintiff alleges that the
dashboard's indicator lights were illuminated and that a
message appeared on the dashboard, indicating that the shifter
needed immediate service. *Id.* He asserts that he took pictures
on his cell phone to document the vehicle; the illuminated
lights; and dashboard message. *Id.*

"Several weeks or days later," Plaintiff allegedly took the
vehicle back to the dealership where he was told there was
damage to the rack and pin. *Id.* at PageID.6. According to
Plaintiff, he was given an estimate of $5,000 to repair the
vehicle. *Id.* Following this incident, he explains that he was
unable to work as a Lyft and Uber driver, which resulted in a
loss of about "$6,000 plus a month" in income. *Id.* Plaintiff
lastly alleges that he had to pay out of pocket expenses for
oil changes, car payments, insurance, and money for public
transportation to search for employment. *Id.* at PageID.7.

Plaintiff now moves the Court to transfer this case to the
Northern District of Georgia under 28 U.S.C. § 1404(a).
ECF No. 24. In support of his Motion, Plaintiff submits his
own affidavit. ECF No. 26. Defendant filed its Response on
October 1, 2019, arguing that while venue is proper in both
the Eastern District of Michigan and the Northern District of
Georgia, Plaintiff has not met his burden to transfer venue to
the Northern District of Georgia. ECF No. 27, PageID.155–
56. Plaintiff submitted a Reply to Defendant's opposition on

September 23, 2019, emphasizing that he "filed this action in the wrong District[.]" [2] ECF No. 25.

2 The Court notes that Plaintiff submitted his Reply brief prior to Defendant's filing of its Response.

### III. LEGAL STANDARD

**\*2** Title 28 U.S.C. § 1404(a) authorizes a district court's transfer of a civil action from one district to another district or division:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The moving party bears the burden of demonstrating by a preponderance of the evidence that, "in light of these factors, 'fairness and practicality strongly favor the forum to which transfer is sought.' " *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003) (quoting *Thomas v. Home Depot U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001)). Ultimately, however, the district court has broad discretion to grant or deny a motion to transfer, so long as jurisdiction is proper in either court. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994); *see also Flagstar Bank, FSB v. Estrella*, No. 13-cv-13973, 2013 WL 6631545, at * 1 (E.D. Mich. Dec. 17, 2013).

"A transfer pursuant to § 1404(a) requires that: (1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and witnesses' convenience." *Estrella*, 2013 WL 6631545, at *2 (internal citation and quotation marks omitted). The Sixth Circuit has set forth relevant factors the district court should consider when deciding whether or not to transfer a civil action. *See Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). Such case-specific factors include:

> (1) the convenience of the parties;
> (2) the convenience of the witnesses;
> (3) the relative ease of access to

sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.

*Audi AG & Volkswagen of America, Inc. v. D'Amato*, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (quoting *MCNIC Oil & Gas Co. v. IBEX Res. Co.*, 23 F. Supp. 2d 729, 738–39 (E.D. Mich. 1998)).

Both private and public interest factors influence the court's transfer determination. Private interest factors involve the preferences and conveniences of the parties and witnesses in the case. The private interest factors include: (1) convenience of the parties and witnesses; (2) accessibility of sources of proof; (3) the costs of securing testimony from witnesses; (4) practical problems associated with trying the case in the least expensive and most expeditious fashion; and (5) the interests of justice. *Moses*, 929 F.2d at 1137. Public interest factors address broader objectives, such as the fair and efficient administration of the judicial system. The public interest factors include: (1) the relative congestion in the courts of the two forums; (2) the public's interest in having local controversies adjudicated locally; and (3) the relative familiarity of the two courts with the applicable law. *Id.*

### IV. ANALYSIS

Plaintiff filed the instant civil action in this Court in June 2019. ECF No. 1. He now moves this Court to transfer venue to the Northern District of Georgia. ECF No. 24. It is well established that "[t]he right to transfer under [28 U.S.C. § 1404(a)] is available to a plaintiff as well as a defendant. A plaintiff is not bound by his choice of forums, if he later discovers that there are good reasons for transfer." *Smith v. ABN AMRO Mortg. Grp Inc.*, 434 F. App'x 454, 465 (6th Cir. 2011) (quoting *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 784 (6th Cir. 1961)). Accordingly, Plaintiff's status as plaintiff does not preclude him from seeking a change of venue pursuant to § 1404(a).

**\*3** As a preliminary matter, the Court acknowledges that the parties agree that venue is proper in both the Eastern

Oliver v. FCA US LLC, Slip Copy (2020)

2020 WL 3071851

District of Michigan and the Norther District of Georgia under
diversity jurisdiction. ECF No. 24, PageID.132; ECF No.
27, PageID.154–55. Plaintiff is a Georgia resident, whereas
Defendant is headquartered in Auburn Hills, Michigan. ECF
No. 27, PageID.155. Venue is likely proper in the Northern
District of Georgia under 28 U.S.C. § 1391(a) because a
substantial part of the events giving rise to the instant action
occurred in the Northern District of Georgia. Accordingly, the
threshold requirement—that the case could have been brought
in the proposed transferee-court—is satisfied. *Thomas v.
Home Depot, U.S.A., Inc*, 131 F. Supp. 2d 934, 936 (E.D.
Mich. 2001); *see also United States v. Currency $96,770*, No.
16-cv-11185, 2016 WL 7367424, at *4 (E.D. Mich. Dec. 20,
2016).

The Court denotes that Plaintiff's transfer motion was filed
within two weeks of this Court's Order denying his Motion
to Relate Case to MDL 2744. *See* ECF No. 18. In its Order,
the Court determined that "Plaintiff's action will not involve
substantially similar evidence, nor does it arise out of the
same transaction or occurrence as the MDL proceeding"
before the Honorable David M. Lawson, *In re FCA US
LLC Monostable Elec. Gearshift Litig.*, No. 2:16-md-02744.
*Id.* at PageID.113. The Court further notes that Plaintiff
listed the MDL proceeding in the "Notes" section of his
Complaint. ECF No. 1, PageID.12. The timing of Plaintiff's
transfer motion leads the Court to suspect that Plaintiff may
have filed his instant Motion in an attempt to forum shop
upon receiving an unfavorable ruling. *See Energy Conversion
Devices Liquidation Tr. v. Trina Solar Ltd.*, No. 13-14241,
2014 WL 2763648, at *2 (E.D. Mich. June 18, 2014)
(collecting cases). Furthermore, the Court takes notice that
Plaintiff does not allege any changed circumstances in his
Motion for warranting a transfer. Nevertheless, the Court
will address the "private interests of the parties, including
their convenience and the convenience of potential witnesses,
as well as other public-interest concerns, such as systemic
integrity and fairness, which come under the rubric of
'interests of justice.' " *Currency $96,770*, 2016 WL 7367424,
at *4 (quoting *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131,
1137 (6th Cir. 1991)).

Here, the Court finds that Plaintiff has not met his burden
to show that the Northern District of Georgia is a more
convenient forum than the Eastern District of Michigan. *Id.*
To support his argument, Plaintiff only sets forth general
statements. For example, he argues that "all witnesses
reside in the Northern District of Georgia. Furthermore,
all of Plaintiff's witnesses from various collision centers

reside in the District of Georgia as well." ECF No. 24,
PageID.136. In his affidavit, Plaintiff asserts that "[a]ll of the
evidence, witnesses, photographs, and other related materials
are located in the Northern District of Georgia." ECF No. 29,
PageID.175. While these facts may be true, Plaintiff provides
no evidence to support such vague allegations and thus has not
met his burden. *See, e.g., Irina Solar Ltd.*, 2014 WL 2763648,
at *3 (finding that the plaintiff failed to meet its burden when it
argued that "because Defendants are all located in California,
most of Defendants' witnesses are likely to be there"); *Mosby
v. Greyhound Lines, Inc.*, No. 06-13157, 2006 WL 3206069,
at *3 (E.D. Mich. Nov. 3, 2006) (citations omitted) ("A
motion to transfer will be denied upon a mere allegation that
witnesses are necessary without stating who they are and
what their testimony will cover."); *Shapiro v. Merrill Lynch
& Co.,* 634 F. Supp. 587, 590 (S.D. Ohio 1986) (moving
party must specify the number of witnesses that would be
inconvenienced, and the severity of the inconvenience for a
§ 1404(a) transfer).

*4 Defendant concedes that the Northern District of Georgia
is a more convenient forum for Plaintiff "given his current
circumstances." ECF No. 27, PageID.157. It argues, however,
that the Court should not weigh the convenience of Plaintiff's
witnesses. The Court agrees. While it may be true that
all of Plaintiff's witnesses are in Georgia, courts generally
do not give weight to unsupported claims that travel costs
are a burden. *See Flagstar Bank, FSB v. Estrella*, No. 13-
cv-13973, 2013 WL 6631545, at *2 (E.D. Mich. Dec. 17,
2013) (citing *Thomas v. Home Depot U.S.A., Inc.*, 131
F. Supp. 2d 934, 936 (E.D. Mich. 2001)) (finding that
the inconvenience of having to travel from Massachusetts
to Michigan was not significant enough to overcome the
preference for plaintiff's choice of venue). Furthermore, the
Court denotes that Defendant lists its own witnesses in its
Response, including technicians at FCA-authorized serving
dealerships that worked on Plaintiff's vehicle, as well as
an expert witness that would perform a legal inspection of
Plaintiff's vehicle. ECF No. 27, PageID.150. Indeed, "[a]
transfer is not appropriate if the result is simply to shift the
inconvenience from one party to another." *Estrella*, 2013 WL
6631545, at *2 (citation omitted). Accordingly, the Court
finds that Plaintiff has not met his burden on this factor
assessing the convenience of the witnesses.

In his affidavit, Plaintiff asserts that "[a]ll of the evidence,
[ ] photographs, and other related materials are located in the
Northern District of Georgia." ECF No. 29, PageID.175. The
Court emphasizes that the location of relevant documents is

**Oliver v. FCA US LLC, Slip Copy (2020)**

2020 WL 3071851

of no consequence. *See Davis v Snyder*, No. 13-cv-14709, 2013 WL 6507336, at *5 (E.D. Mich. Dec. 12, 2013). "[M]odern photocopying technology and electronic storage deprive this issue of practical or legal weight." *Id.* (citation omitted). Further, the Court denotes that "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing document." *Id.* (citation omitted). The Court therefore does not find that this factor weights in favor of transfer.

Next, the Court denotes that neither party has alleged that there are unwilling witnesses. Accordingly, the Court does not find that this factor should be considered in its present balancing.

The Court then should consider the cost of obtaining willing witnesses. Neither party has made arguments specifically on this point, and the Court addressed monetary considerations in the witness convenience section above. Accordingly, this factor does not weigh in favor of or against transfer.

As to the sixth consideration—practical problems associated with trying the case most expeditiously and inexpensively—the Court finds that this factor should not weigh in favor of or against transfer. Notably, Plaintiff does not speak to this factor in either his Motion or affidavit. Defendant asserts that it will file a motion for judgment on the pleadings before any significant discovery or motion practice continues. ECF No. 27, PageID.163.

Finally, the Court determines that Plaintiff has not met his burden to show that the "interests of justice" favors the Northern District of Georgia. *United States v. Currency $96,770*, No. 16-cv-11185, 2016 WL 7367424, at *4 (E.D. Mich. Dec. 20, 2016) (quoting *Moses v Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991)). In *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, the district court determined that if it granted plaintiff's motion for transfer, it would thus allow plaintiff to engage in forum shopping "and thereby disserve the interests of justice." No. 13-14241, 2014 WL 2763648, at *3 (E.D. Mich. June 18, 2014) (discussing by analogy how courts regularly grant a defendant's transfer motion when the plaintiff has engaged in forum shopping when initially filing suit). Here, as discussed above, the timing of Plaintiff's transfer motion leads the Court to suspect that Plaintiff may have filed his instant Motion after receiving an unfavorable ruling to relate his case to a MDL within this district. Accordingly, this factor should not weigh in favor of transfer.

The Court takes notice of Defendant's argument that this Court has more experience applying Michigan law than does the Northern District of Georgia. ECF No. 27, PageID.163. In his Complaint, Plaintiff alleges two claims under Michigan law (Count III: the Michigan Consumer Protection Act; and Count IV: implied warranty under Michigan tort law). ECF No. 1, PageID.8. Indeed, the Court's "interests of justice" analysis includes the consideration of whether the administration of justice will be advanced by a transfer. *Currency $96,770*, 2016 WL 7367424, at *7 (citing *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000)). The Court does not doubt that the Northern District of Georgia is capable of deciding the issues and law presented in Plaintiff's case. While the Court acknowledges that this district has more experience applying Michigan law, it concludes that this factor does not weigh in favor of or against transfer.

**\*5** The Court is persuaded by Defendant's argument that it has a "strong interest in having a dispute with a customer about a vehicle it manufactured decided locally." ECF No. 27, PageID.164–65. Indeed, Plaintiff's action stems from an alleged manufacturing defect with a vehicle which was purportedly manufactured by Defendant in this district. The Court reiterates that Plaintiff chose this forum initially to litigate his action against Defendant and presents no changed circumstances since he filed his Complaint.

In sum, Plaintiff has not met his burden of proving by a preponderance of the evidence that the Court should transfer his case. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003). Plaintiff's Motion to Transfer Venue [#24] will thus be denied. The Court is mindful and takes seriously that Plaintiff is currently in prison at Lee County Prison in Leesburg, Georgia. *See* ECF No. 34. However, the Court also denotes that Plaintiff was in prison at the time he chose this specific forum when he filed his Complaint. *See* ECF No. 1. Plaintiff's circumstances thus remain unchanged since the time of his filing his instant action.

## V. CONCLUSION

For the reasons articulated above, the Court will **DENY** Plaintiff's Motion to Transfer Venue [#24].

**IT IS SO ORDERED.**

Oliver v. FCA US LLC, Slip Copy (2020)
2020 WL 3071851

**All Citations**

Slip Copy, 2020 WL 3071851

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 2:20-cv-12933-GAD-KGA ECF No. 30-1, PageID.340 Filed 11/02/21 Page 13 of 31

Ortho-McNeil Pharmaceutical, Inc. v. Caraco Pharmaceutical..., Not Reported in Fed....

2005 WL 8154955

2005 WL 8154955
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

ORTHO-MCNEIL
PHARMACEUTICAL, INC., Plaintiff,

v.

CARACO PHARMACEUTICAL
LABORATORIES, LTD., Defendant.

Case No. 04-CV-73698
|
Filed 06/13/2005
|
Signed 06/12/2005

**Attorneys and Law Firms**

David T. Pritikin, Sidley Austin, Chicago, IL, Fred K. Herrmann, William A. Sankbeil, Kerr, Russell, Detroit, MI, for Plaintiff.

Derek J. Sarafa, Winston and Strawn, Chicago, IL, Kathryn A. Viviano, Viviano and Viviano, Mt. Clemens, MI, for Defendant.

ORDER DENYING PLAINTIFF'S MOTION
TO TRANSFER (DOCUMENT # 9)

GEORGE CARAM STEEH, UNITED STATES DISTRICT JUDGE

*1  This case arises out of a patent infringement action brought by plaintiff Ortho-McNeil Pharmaceutical Inc. ("Ortho-McNeil") against defendant Caraco Pharmaceutical Laboratories Ltd. ("Caraco"), a company seeking to manufacture a generic version of Ortho-McNeil's Ultracet drug product. Plaintiff filed the lawsuit in this court, and now seeks to transfer to the United States District Court for the District of New Jersey, where two similar cases are pending against two other generic drug manufacturers involving the same patent and generic copies of the same drug that Caraco is seeking to market. For the reasons given below, plaintiff's motion to transfer pursuant to 28 U.S.C. § 1404(a) is DENIED.

FACTUAL BACKGROUND

Plaintiff sells the FDA-approved New Drug Application ("NDA") No. 21-123 for the short term management of acute pain, using the tradename Ultracet. Ultracet is an extremely successful product, with sales in the United States in excess of 300 million dollars per year.

Defendant Caraco is a Michigan corporation engaged in the business of developing, manufacturing, and marketing generic drugs. It does not maintain any offices, lease any property, or have any facilities in New Jersey. The distribution of its products is handled through independent distributors— two to four of which are headquartered in New Jersey.

Caraco is the third generic drug manufacturer to file an Abbreviated New Drug Application ("ANDA") seeking permission to market a generic copy of the patent-protected Ultracet. The first two ANDAs were filed by Kali Laboratories, Inc. ("Kali") and Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. ("Teva"). Plaintiff brought suit against Kali and Teva pursuant to the Hatch-Waxman Act, alleging infringement of the '691 patent.

Plaintiff filed suit against Kali in November 2002, and against Teva in January 2004. Both suits were filed in New Jersey, where Kali, Teva, plaintiff, and a sizable portion of the pharmaceutical industry are located. The cases were assigned to different judges, and a request by plaintiff to have them consolidated or reassigned was denied because the cases were on different timelines. Teva chose to forego its own discovery and rely on the Kali material, so the schedules of the two cases have since converged. Discovery closed in the Kali case, and was scheduled to close on May 20, 2005 in the Teva case. Substantially identical summary judgment motions have been filed, addressing the issues of infringement and validity. Plaintiff has filed another motion to consolidate the cases, that is fully briefed and awaiting decision.

Caraco sent plaintiff notification of its ANDA in August 2004 and plaintiff filed suit in September 2004. Plaintiff requested that Caraco consent to jurisdiction in New Jersey, but Caraco declined. Plaintiff brought this action in Detroit, where Caraco is based. Plaintiff explains that it took a cautious view of personal jurisdiction due to the intricacies of the Hatch-Waxman Act.

**\*2** The Hatch-Waxman Act requires the FDA to stay approval of ANDAs for 30 months while the ANDA filer and NDA/patent holder litigate the patent issues. 21 U.S.C. § 355(c)(3). The 30-month stay is only enforced if "an action is brought for infringement" by the NDA/patent holder within 45 days of receiving the generic drug manufacturer's notification of its ANDA, and if the NDA/patent holder does not receive an adverse ruling. Plaintiff was fearful that if it brought suit against Caraco in a jurisdiction where the court later determined personal jurisdiction was lacking and dismissed the case, it could potentially lose the benefit of the 30-month stay.

After filing this case, plaintiff approached defendant about transferring the case to New Jersey. Defendant instead suggested the case be stayed pending the outcome of the New Jersey cases, and that the parties agree to accept certain outcomes of the New Jersey cases as binding in this case (validity and enforceability, but not infringement or claim construction). The parties delayed discovery while they tried to work out an agreement, but have recently reached an impasse. There is a discovery schedule in place, and on March 11 plaintiff served all the documents produced by it in the Kali and Teva cases, as well as the pleadings and discovery requests and responses, transcripts, exhibits and videotapes of Ortho-McNeil fact witness depositions in those cases. Defendant is reviewing the material to determine if it needs to take more fact discovery. Plaintiff states that it is willing to narrow the scope of fact discovery on its part. As for expert discovery, plaintiff will rely on the validity and enforceability expert reports from the Kali and Teva cases.

There are two issues in this case: (1) whether Caraco's generic copy of Ultracet infringes the '691 patent and (2) whether the '691 patent is valid and enforceable. Plaintiff maintains that most of the fact witnesses on these issues are located in or around northern New Jersey. Plaintiff argues that testimony from Caraco's employees should be unnecessary because any testimony regarding the issue of infringement will be limited to expert testimony because the alleged infringing products are hypothetical and defined solely by reference to Caraco's ANDA. As for validity and enforceability of the '691 patent, plaintiff contends that nearly all likely fact witnesses are current or former Ortho-McNeil/Johnson & Johnson employees living in or around northern New Jersey. Plaintiff lists third parties who were deposed by Kali and may be third party witnesses at a trial in this case: the inventors of the '691 patent reside in Philadelphia, the statistician who did analysis of the animal test data in the '691 patent resides

in New Jersey, the lab assistant who assisted in preparation of the animal test data resides in Pennsylvania, the clinical investigators who ran early clinical trials reside in New Jersey and New York, and a former employee who oversaw early clinical trials resides in Philadelphia. All of these third parties are within the subpoena power of the New Jersey court.

Plaintiff makes an argument that defendant should be registered as a drug manufacturer or wholesale drug distributor in New Jersey, under New Jersey law. N.J. Admin. Code § 8:31-3A.4. Plaintiff also argues that defendant has fifteen products listed on the New Jersey Generic Formulary. Plaintiff argues that the submission of applications for these products constitutes substantial contact with the state of New Jersey.

## ANALYSIS

### I. Transfer of Forum by Plaintiff

The change of forum statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Sixth Circuit has recognized that there are instances where it may be appropriate to grant a motion to transfer brought by a plaintiff:

> **\*3** The right to a transfer under the statute is available to a plaintiff as well as a defendant. A plaintiff is not bound by his choice of forums, if he later discovers that there are good reasons for transfer. A judge in his discretion may take this into consideration in determining if a transfer should be granted.

Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782, 784 (6th Cir. 1961). In all of the cases brought to the attention of the court, it was considered to be significant that the plaintiff discovered good reasons for a transfer *after* the initial choice of forum. In Philip Carey the Court did state that the demonstration of post-filing events is *one* factor a court may consider when exercising its discretion to transfer a case. Therefore, there is not an immutable rule prohibiting courts from considering factors known at the time suit was filed.

Case 2:20-cv-12933-GAD-KGA ECF No. 30-1, PageID.342 Filed 11/02/21 Page 15 of 31

Ortho-McNeil Pharmaceutical, Inc. v. Caraco Pharmaceutical..., Not Reported in Fed....

2005 WL 8154955

Plaintiff in this case first concedes that since it filed the complaint, there have been no changed circumstances that justify transfer. Instead, plaintiff explains that it chose not to file suit in New Jersey in the first instance because the New Jersey court might have found that it did not have personal jurisdiction over defendant. Plaintiff was allegedly fearful that if its lawsuit was dismissed for lack of personal jurisdiction, the 30-month stay of defendant's ANDA application provided by the Hatch-Waxman Act might not be enforced. Plaintiff made the tactical decision to pursue its lawsuit in this forum, and try to transfer venue after the lawsuit was filed. Defendant characterizes plaintiff's tactics in the following way: "Ortho has brought the action here in order to try to litigate the issue of personal jurisdiction via a transfer motion, without the risk of having its case dismissed." Defendant warns that the transfer statute does not permit a plaintiff to engage in this sort of manipulation of forums, otherwise a motion to transfer venue could enable the plaintiff to shop for a particular forum or judge.

The plain language of section 1404(a) provides for transfer for the convenience of the parties and witnesses, and in the interest of justice. There is no requirement that the request come from any particular party or that reasons for transfer arise after the complaint is filed. However, it seems unlikely that the drafters intended to permit plaintiffs to bring a motion for forum nonconveniens without some very good reason. The presumption against changing a plaintiff's choice of forum still applies when the plaintiff makes the motion to transfer.

Plaintiff argues that defendant's unilateral withdrawal of its stay offer and evidence made available to plaintiff only recently by way of the Jitendra Doshi deposition, represent "changed circumstances" justifying transfer. However, it does not appear to the court there was a stay offer by defendant. At most there was an offer to discuss a stay. Therefore, the court will consider the information revealed in the Doshi deposition in deciding the pending motion.

## II. Forum Nonconveniens Analysis

Under 1404(a), to justify transferring a case, the movant must demonstrate that: (1) the action could have been brought in the transferee court; (2) transfer is for the convenience of the witnesses and parties; and (3) transfer serves the interest of justice. McCuiston v. Hoffa, 313 F. Supp. 2d 710, 719 (E.D. Mich. 2004). In order to establish whether the forum is sufficiently convenient and in the interest of justice, courts consider (1) the relative ease of access to sources of proof; (2)

the availability of process to compel attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; and (4) the practical problem associated with trying the case most expeditiously and inexpensively. Id.

### A. Action Could have Been Filed In New Jersey

**\*4** The United States District Court for the District of New Jersey has subject matter jurisdiction over this case because federal courts have original jurisdiction and exclusive jurisdiction over patent infringement actions.

A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. Fed. R. Civ. P. 4(e). New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the U.S. Constitution. N.J. Court Rule 4:4-4c. Parties who have constitutionally sufficient "minimum contacts" with New Jersey, and where asserting jurisdiction over the party would not offend "traditional notions of fair play and substantial justice", are subject to suit there. Helicoperos Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

Plaintiff alleges that defendant's contacts with New Jersey are sufficiently "continuous and systematic" to justify the assertion of general personal jurisdiction based on its contacts with at least one New Jersey administrative agency and the sales of its other generic drug products in New Jersey. New Jersey has implemented a system governing the automatic substitution of generic versions of branded prescription drugs. The system is run by the New Jersey Drug Utilization Review Council and requires pharmacists to substitute generic drugs for their brand name counterparts even if the doctor's prescription does not specifically allow such substitution. To be eligible for this automatic substitution, a generic drug must be on the New Jersey Generic Formulary. Plaintiff alleges that defendant has gone through an application process for at least fifteen generic drugs in order to be listed on the Formulary. Plaintiff argues that this qualifies as continuous and systematic contacts with New Jersey. In addition, it demonstrates defendant's goal of selling its drug products in New Jersey.

Defendant disputes that its inclusion on the New Jersey Formulary is evidence that it solicits substantial or continuous business with New Jersey. Mr. Doshi, chief executive officer of defendant, testified that defendant has not had any contacts with the New Jersey Formulary in the last 1 ½ to 2 years. Furthermore, Mr. Doshi explains that in the last couple of

years generic drugs are automatically listed on the New Jersey Formulary after approval by the U.S. Food and Drug Administration. Therefore, defendants applications were two years old at the time plaintiff's lawsuit was filed.

Defendant's additional uncontested contacts with New Jersey can be summed up as follows. Defendant contracts with two to four independent distributors and one PBM (Pharmacy Benefit Manager) which are headquartered in New Jersey. The drugs are actually shipped by defendant to any place in the country that the distributors request they be shipped. Defendant does not advertise in New Jersey, and is not licensed to do business in the state. Defendant did employ a sales representative in New Jersey, but he was terminated two years ago, and was not replaced. Defendant made telephone calls and had email communications with its three to five New Jersey customers, as well as occasional face-to-face visits.

In Michigan Nat'l Bank v. Quality Dinette, Inc., 888 F.2d 462 (6th Cir. 1989), the Sixth Circuit found "continuous and systematic" contacts where, in the year preceding the action, the plaintiff had dozens of sales in Michigan, retained an independent sales representative in the state, and conducted mail order solicitations of Michigan customers. Furthermore, plaintiff made at least one sale in Michigan each month during the two years prior to suit being filed. These figures represent only 3% of plaintiff's total sales during those years, but when viewed with all other relevant factors, the evidence was found to be sufficiently "continuous and systematic."

**\*5** In Conti v. Pneumatic Products Corp., 977 F.2d 978 (6th Cir. 1992), defendant sold its products in Ohio through two distributors. The distributors acted as defendant's agents in connection with defendant's direct sales to end users, and they regularly purchased defendant's products for resale in Ohio. Defendant's employees occasionally visited and telephoned the distributors with technical support, but the distributors mostly served the products they sold. The court held plaintiff did not establish a prima facie case that defendant's contacts were of a "continuous and systematic" nature to maintain general jurisdiction over defendant in Ohio. Id. at 981.

In the present case, defendant contracts with at least two independent distributors and one PBM in New Jersey. Mr. Doshi explained that someone from defendant's marketing department goes to New Jersey to meet with the distributors three to four times a year. The purpose of the visits is to make the distributor aware of all of defendant's products and to see if they are interested in selling defendant's other products.

Defendant had net sales in New Jersey of \$2.5 million in the previous two years, which translates to 4-5% of its U.S. sales. Three to four visits to the state a year, and 4-5 % of sales do not rise to the level of "continuous and systematic."

### B. Convenience of Witnesses and Parties
Plaintiff argues that many third parties live closer to New Jersey than Detroit, and that this court lacks subppoena power over most witnesses. While Philadelphia is indeed closer to New Jersey than Detroit, it is not substantially more burdensome to fly between Philadelphia and Detroit than it is to fly between Philadelphia and New Jersey. Furthermore, whether an individual is subject to the subpoena power of the court only becomes a factor when the individual is unwilling to attend trial in the forum. Plaintiff has not shown that any of its witnesses are unwilling to testify in Detroit.

### C. Interest of Justice
The movant bears the burden of demonstrating that "fairness and practicality strongly favor the forum to which transfer is sought." The movant must make this showing by a preponderance of the evidence. Audi AG and Volkswagen of America v. D'Amato, 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) (citations omitted). Here, transfer to New Jersey will merely shift the burdens of this litigation from plaintiff to defendant. Plaintiff argues that transfer should still occur because (1) the Kali and Teva cases are already pending in New Jersey, and (2) the witnesses are located closer to New Jersey.

The Kali and Teva cases have not been consolidated, are on the dockets of two different judges, and are much older than this case. The court does not agree that this factor favors transfer.

### CONCLUSION

In balancing the relevant factors known to the court at this time, the court concludes that plaintiff's original choice of forum should prevail. Plaintiff's motion to transfer is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2005 WL 8154955

Ortho-McNeil Pharmaceutical, Inc. v. Caraco Pharmaceutical..., Not Reported in Fed....
**2005 WL 8154955**

**End of Document**                              © 2021 Thomson Reuters. No claim to original U.S. Government Works.

 2021 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 1445808
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

PROGME CORPORATION, Plaintiff,

v.

TWENTY-FIRST CENTURY FOX, et al., Defendant.
Progme Corporation, Plaintiff,

v.

Google, LLC, Defendant.

CASE NO. 18-11057, CASE NO. 18-11728
|
Signed 03/25/2020

**Attorneys and Law Firms**

Michael T. Raggio, Raggio & Dinnin, Auburn Hills, MI, David A. Reams, Rochester Hills, MI, for Plaintiff.

Adam Michael Wenner, Honigman LLP, Detroit, MI, J. Michael Huget, Sarah E. Waidelich, Honigman LLP, Ann Arbor, MI, Steven Lieberman, Rothwell Figg Ernst & Manbeck, P.C., Washington, DC, for Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION
TO LIFT THE STAY, DENYING PLAINTIFF'S
MOTION TO TRANSFER, AND GRANTING
PLAINTIFF'S MOTION FOR LEAVE TO AMEND
THE COMPLAINT [ECF No. 18 in Case No.
18-11057 and ECF No. 15 in Case No. 18-11728]**

Denise Page Hood, United States District Judge

**I. INTRODUCTION**

 *1 These are two patent cases, both originally assigned to the Honorable Avern Cohn as companion cases before later being reassigned to the undersigned on January 2, 2020. In both cases, Progme claims infringement of U.S. Patent No. 8,713,425 (the '425 patent). In broad terms, the '425 patent, titled "Audio/Video Program-Related Hyperlink Printer," covers a system in which hyperlinked content broadcast on radio or television programs can be printed. Progme claims that Defendants have used the patented technology when transmitting program signals during broadcasting. In April 2018, Progme sued Defendant Twenty-First Century Fox, Inc. and other Fox entities (collectively, Fox). *Progme*

*v. Fox*, 18-11057 (the Fox Case). In June 2018, Progme sued Defendant Google, LLC (Google). *Progme v. Google*, 18-11728 (the Google Case). Both cases have been stayed pending reexamination and reissue proceedings before the United States Patent and Trademark Office (PTO).

On December 4, 2019, Progme filed a Motion to Lift the Stay and Transfer or, in the Alternative, for Leave to File an Amended Complaint in each case. *See* ECF No. 18 in the Fox Case and ECF No. 15 in the Google Case. Both motions are fully briefed. Because the motions present essentially the same arguments, they will be considered together.

For the reasons set forth below, the Court GRANTS Progme's request to lift the stay; DENIES Progme's request to transfer the cases; and GRANTS Progme's request for leave to file an amended complaint.

**II. BACKGROUND**

The named inventor of the '425 patent is David A. Reams, a former Michigan attorney. Reams also prosecuted the a series of applications leading to the '425 patent for nearly 13 years, until the '425 patent issued on April 9, 2014. In addition to being the inventor and the prosecuting attorney, Reams is the President, Treasurer, Secretary, and Director of Progme. Progme has a history of litigation regarding the '425 patent, as set forth below.

In 2015, Progme sued a number of entities in this district, including Comcast, claiming infringement of the '425 patent. *Progme v. Comcast*, 15-13935 (the Comcast case). Within two weeks of filing the complaint, Progme filed a notice of voluntary dismissal, "dismissing with prejudice" all defendants except for Comcast. *See* ECF No. 4 in the Comcast Case. Comcast then filed a motion to transfer. The district court granted the motion and transferred the case to the Eastern District of Pennsylvania. *See* ECF No. 48 in the Comcast Case. On March 6, 2020, the Eastern District of Pennsylvania dismissed the Comcast Case without prejudice. ECF No. 26, in the Fox Case (Defendants' Notification of Order from the Eastern District of Pennsylvania); ECF No. 27 (Order from the Eastern District of Pennsylvania, which is ECF No. 63 in the Comcast Case).

During the pendency of the Comcast Case, Comcast filed a request for ex parte reexamination of the '425 patent with the PTO. On May 1, 2018, the PTO ordered reexamination based on Comcast's ex parte reexamination request. In addition to Comcast's reexamination proceeding, on April 4, 2018,

Progme Corporation v. Twenty-First Century Fox, Slip Copy (2020)

2020 WL 1445808

Progme filed a reissue application for the '425 patent with the PTO.

**\*2** The day before filing the reissue application, on April 3, 2018, Progme filed the Fox Case. Two months later, on June 1, 2018, Progme filed the Google Case. Shortly thereafter, in early August 2018, Judge Cohn stayed the Fox and Google cases pending the outcome of the PTO proceedings, including both the ex parte reexamination and the reissue application. *See* ECF No. 14 in the Fox Case and ECF No. 11 in the Google Case.

On August 6, 2019, the PTO mailed a notice of allowance for the reissue application of the '425 patent. On November 19, 2019, the PTO issued the reissue patent, RE47,735, which generally allows claims 1-25 of the '425 patent. On December 4, 2019, following the conclusion of the PTO proceedings, Progme filed the instant motions to lift the stay in both cases. *See* ECF No. 18 in the Fox Case and ECF No. 15 in the Google Case.

## III. APPLICABLE LAW

### A. Lift Stay
Where a court has already granted a stay pending the outcome of PTO proceedings, the court also has the inherent power and discretion to lift that stay when appropriate. *See Lear Corp. v. TS Tech USA Corp.*, No. 2:09-CV-993, 2013 WL 12178111, at \*3 (S.D. Ohio Mar. 12, 2013).

### B. Transfer Venue
A civil action may be transferred from one district court to another pursuant to 28 U.S.C. § 1404:

> (a) For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

### C. Amend Complaint
In a case where a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave

when justice so requires." F. R. Civ. P. 15(a)(2). It is within the Court's discretion whether to grant Plaintiff's motion for leave to file an amended complaint. The factors a court is to consider when determining whether to permit a plaintiff to file an amended complaint are:

(1) the delay in filing the motion,

(2) the lack of notice to the other party,

(3) bad faith by the moving party,

(4) repeated failure to cure deficiencies by previous amendments,

(5) undue prejudice to the opposing party, and

(6) futility of the amendment.

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). A district court may deny a plaintiff leave to amend his complaint when the proposed amendment would be futile. *See, e.g., Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). An amendment is deemed futile when it would not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

## IV. ANALYSIS

### A. Subject Matter Jurisdiction
As an initial matter, Google argues that the case should be dismissed for lack of subject matter jurisdiction, contending that because the '425 patent no longer exists, the complaint no longer presents a case or controversy, i.e. that the Fox and Google cases are moot.

Under Federal Circuit law, "when a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot." *Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013). "Suits based on cancelled claims must be dismissed for lack of jurisdiction." *See SHFL Entertainment, Inc. v. DigiDeal Corp.*, No. 2016-2705, 2018 WL 2049238, at \*3 (Fed. Cir. May 2, 2018). *See also Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) ("Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists. If there is no longer a possibility that an

appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction.") (internal citations and quotation marks omitted).

**\*3** While Progme may not proceed on the ·425 patent as it existed prior to the PTO proceedings, claims were allowed on reexamination and a new version of the ·425 patent was reissued. Progme has also moved for leave to amend the complaint to incorporate the outcome of the PTO proceedings, i.e. the reissuance of the ·425 patent. Courts have granted leave in similar circumstances, thereby curing any mootness issues. *See Lotes Co., Ltd. v. Hon Hai Precision Industry Co., Ltd.*, 2017 WL 282583, at \*6 (N.D. Cal. 2017) (granting leave to amend complaint to reflect outcomes of concluded reexaminations of patents in suit); *ZiLOG, Inc. v. Quicklogic Corp.*, No. C03-03725 JW, 2006 WL 563057, at \*1 (N.D. Cal. Mar. 6, 2006) (allowing leave to amend initial disclosures of asserted claims to add an additional claim in the patent after ex parte reexamination proceeding). *See also MyGo, LLC v. Mission Beach Indus.*, LLC, No. 16-CV-2350-GPC-RBB, 2018 WL 3438650, at \*3 (S.D. Cal. July 17, 2018) ("the Court finds that a motion for leave to amend is required in order to add previously unasserted claims in the first instance after ex parte reexamination").

The cases cited by Google where the courts dismissed cases after PTO proceedings concluded are inapposite. In *Fresenius*, *supra*, the Federal Circuit addressed the question of whether, under the reexamination statute, the cancellation of claims by the PTO is binding in pending district court infringement litigation. The Federal Circuit stated that a patentee loses any cause of action based on claims that were cancelled during reexamination proceedings, but it did not consider the situation where a plaintiff seeks leave to amend after PTO proceedings in a case that was specifically stayed pending the outcome of PTO proceedings. In *Target Training Intern., Ltd. v. Extended Disc. North America, Inc.*, 645 F. App'x 1018 (Fed. Cir. 2016), the Federal Circuit considered whether claims newly added to a patent during a reexamination that cancelled asserted claims were automatically added to pending infringement litigation. The Federal Circuit affirmed the district court's dismissal of the newly added claims because: (1) Target did not allege infringement on the new claims at the time the complaint was filed as the newly added claims did not exist; and (2) Target was bound to its preliminary infringement contentions issued prior to the reexamination. *See id.* at 1024.

The Court declines to dismiss the case on jurisdictional grounds.

**B. Lift Stay**
Neither Fox nor Google oppose Progme's request to lift the stay. The Court, therefore, lifts the stay.

**C. Venue**

**1. Forum Shopping**
Before considering the factors for transfer, Fox argues that the motion is an improper attempt at forum shopping. It is well established that "§ 1404(a) should not create or multiply opportunities for forum shopping." *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990).

Fox notes that the request to change venue comes from Progme, the plaintiff. Another judge in this district has commented on such a situation:

> The plain language of section 1404(a) provides for transfer for the convenience of the parties and witnesses, and in the interest of justice. There is no requirement that the request come from any particular party or that reasons for transfer arise after the complaint is filed. *However, it seems unlikely that the drafters intended to permit plaintiffs to bring a motion for forum nonconveniens without some very good reason. The presumption against changing a plaintiff's choice of forum still applies when the plaintiff makes the motion to transfer.*

*Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, No. 04-CV-73698, 2005 WL 8154955, at \*3 (E.D. Mich. June 13, 2005) (Steeh, J.) (emphasis added).

Although not prohibited, it is unusual that Progme, a Michigan corporation, seeks to transfer cases from its chosen forum that have been pending for over 20 months. It appears, based on Reams' affidavit, that the request is largely based on two events. First, Reams' expressed desire to combine the Fox

Case, the Google Case, and the Comcast Case (which has now been dismissed) in a single forum. *See* Affidavit of David A. Reams, ECF No. 18-3 in the Fox Case, PageID.428. Second, Reams has relocated from Michigan to Washington, D.C. *See id.* at PageID.429. Progme's additional asserted reasons for transfer appear to be based on circumstances that existed at the time the complaint was filed. In other words, nothing has changed since filing these two cases, except for Reams' location and a desire to consolidate the cases in Delaware. Although the Court declines to find that Progme has engaged in forum shopping as a basis to deny its motions to transfer, Fox's argument is not lacking in merit.

**2. Factor Analysis**

\*4 Progme requests that both cases be transferred to the District of Delaware under section 1404(a). The determination of whether a case should be transferred under this section involves balancing of the following factors: (1) convenience of the parties; (2) convenience of the witnesses; (3) ease of access to sources of proof; (4) availability of process to compel attendance of witnesses; (5) costs of obtaining witnesses; (6) expense and expeditiousness of trying matter; and (7) interests of justice. *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393 (E.D. Mich. 1994).

**a. Convenience of the Parties**

Progme argues that Delaware is a more convenient forum for the parties because it is closer to where Reams now lives and both Fox and Google are incorporated in Delaware. This argument does not carry the day. Progme does not explain how Fox or Google would benefit from a transfer based on their state of incorporation. Rather, as Google points out, a more convenient forum for Google would be in California, where it is headquartered. As to Fox, it retained and has been working with local (Detroit, Michigan) counsel since the beginning of the case. At best, Progme has shown that Delaware would be more convenient for Reams, a non-party but someone clearly with an interest in the litigation. This factor does not weigh in favor of transfer. *See B E. Tech., LLC v. Sony Computer Enm't Am. LLC*, No. 12-CV-02826, 2013 WL 3804030, at \*12 (W.D. Tenn. July 19, 2013) (denying motion to transfer in part where "Sony has shown that the Northern District of California would be a more convenient forum for it, but it has not shown that the Northern District of California is a more convenient forum for both parties.").

**b. Convenience of the Witnesses/Availability of Process to Compel/Costs**

Progme has not identified a single witness who is located in Delaware. Progme instead relies on witnesses it alleges are located in *Washington, D.C.* and says it would subpoena them for trial in Delaware. As explained below, Progme has not met its burden.

First, Progme says that it intends to subpoena the Federal Communications Commission (FCC) custodian of records to appear as a fact witness and to call three FCC employees (James Miller, Walter Johnston, and Pete Cole) as expert witnesses. There are significant problems with calling these witnesses. First, because the FCC is not a party in this proceeding, the FCC witnesses would be non-party governmental witnesses subject to the *Touhy* regulations that limit the availability of governmental witnesses. *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951) (holding promulgated into an administrative regulation and was subsequently codified at 32 C.F.R. § 97.6); *see* 47 C.F.R. § 0.463. Progme has not indicated that it requested or received approval from the General Counsel of the FCC to authorize the proposed FCC witnesses to produce records or speak on behalf of their work conducted during the course of business as present FCC personnel, as required by 47 C.F.R. § 0.463. There is no indication that Progme will be successful in compelling the FCC witnesses to testify in either forum.

Second, contrary to Progme's assertions that James Miller is "the Senior Attorney Advisor" at the FCC, "has been and continues to supervise said additional testing at the FCC ... in Washington, DC," and he is "within 100 miles of the United States District Court for the District of Delaware," James Miller appears to have left his position at the FCC in February 2019 and now resides in Japan – beyond the Court's subpoena power, regardless of forum. *See* Affidavit of David Reams, ECF No. 18-3 in the Fox Case, PageID.431, Exhibit H to Davis Declaration, ECF No. 21-9, PageID.527. This fact suggests that Progme has not made reasonable inquiries as to whether any of these FCC witnesses would be available to it, even if this case were transferred to Delaware. Because it is very unlikely that Miller will be a witness in this forum or Delaware, Miller's purported convenience is irrelevant to the transfer analysis.

\*5 Third, Progme has not clearly explained how the testimony of FCC employees would be relevant to any issue in the case. Aside from vague statements relating to the

alleged roles of the FCC employees in "additional testing" pursuant to the "FCC Speed App" and general assertions that they are "key witnesses," Progme has not explained the specific subject matter of the proposed testimony or how said testimony relates to the infringement allegations made in the complaint. This weighs against transfer. *See Crestmark Fin Corp. v. Omo Sci , Energy & Tech., Inc.*, No. 10-11795, 2010 WL 3702371, at *4 (E.D. Mich. Sept. 16, 2010) (weighing the witnesses' convenience factor against the movant where the court "fail[ed] to see how the[ ] witnesses would play a role in the defense of this action" and "how the Complaint has anything to do with [the proposed witnesses].").

Fourth, the witnesses would still need to travel from their residences in Washington, D.C. regardless of the chosen forum, and it would be no more convenient for them to drive to Delaware than to fly to Michigan. This too weighs against transfer. *See Silberg v. Zotec Sols , Inc.*, No. 05-CV-73822, 2006 WL 1007635, at *4 (E.D. Mich. Apr. 17, 2006) (" 'Inconvenience' is more than just being upset or reluctant about having to drive a few hours in a car or travel one hour by plane."); *Bestop, Inc v. Tuffy Sec. Prod., Inc.*, No. 2:13-CV-10759, 2013 WL 4496257, at *5 (E.D. Mich. Aug. 21, 2013) ("[I]t seems more convenient for Defendant to fly to Detroit than to drive to the District of Colorado's courthouse, since it will take a shorter period of time to fly.").

Progme further identifies as a potential witness Dr. Maria Constantinescu (Dr. Constantinescu), who is characterized as "a non-party located in Washington, DC" and who operates Progme's website, Progme.live. Reams' Affidavit, ECF No. 18-3 in the Fox Case, PageID.431. However, it appears that Dr. Constantinescu (who appears to also be known as Dr. Maria Kristofer) is most likely an employee of either Progme or David Reams's law firm. *See* Exhibits I-K of Davis Declaration in the Fox Case. Although Reams's Affidavit refers to Dr. Constantinescu as "a colleague," Progme's motion and Dr. Constantinescu's declaration fail to explain her role and her employment status. Downplaying her ties to Progme would be misleading, as party employees are treated differently from non-party witnesses in the convenience analysis. *Performance Contracting, Inc v DynaSteel Corp.*, No. 12-10165, 2012 WL 1666394, at *4 (E.D. Mich. May 9, 2012) (citing *Steelcase, Inc v Smart Technologies, Inc.*, 336 F. Supp. 2d 714, 721 (W.D. Mich. 2004)) ("[I]t is the convenience of non-party witnesses, rather than employee witnesses ... that is accorded greater weight."). At a minimum, Dr. Constantinescu does not appear to be a true non-party

witness but is rather associated with Progme and working on its behalf.

As with the proposed FCC witnesses discussed above, Dr. Constantinescu is also a Washington, D.C. resident, such that it would be no more convenient for her to travel to Delaware than to Michigan. Although Dr. Constantinescu states she is unable and unwilling to travel to Michigan, this alone does not mean it is inconvenient for purposes of a transfer analysis.

Finally, Progme also identifies Reams as a witness. Reams is clearly a party witness. It is well-established that the location of such a party witness is entitled to minimal weight, if any, in the transfer analysis. *Steelcase*, 336 F.Supp.2d 714 at 721; *Pharmerica Corp v. Crestwood Care Ctr , L.P.*, No. 3:12-CV-00511-CRS, 2013 WL 5425247, at *2 (W.D. Ky. Sept. 26, 2013) ("the convenience of party witnesses is generally not a significant factor in determining whether transfer is appropriate").

### c. Ease of Access to Sources of Proof

**\*6** Progme has not identified any activities in Delaware and has only discussed "testing" activities occurring in Washington, D.C. Progme, however, does not explain how the "testing" activities in Washington, D.C. make it easier to access sources of proof in Delaware. As Fox and Google point out, their sources of discoverable evidence are likely to be located where they are headquartered, in New York and California, respectively. This factor does not weigh in favor of transfer.

### d. Expense and Expeditiousness

Progme says that it will be more expensive for Reams to travel to Michigan, and it will be more expedient to have all three cases in a single forum in Delaware. As discussed above, Reams' convenience is entitled to little weight. Regarding the expediency of trial, Progme has not explained how the District of Delaware is better equipped to adjudicate the Fox Case and the Google Case. Both cases have been pending in this district for over a year and have involved substantive motion practice. Progme has not shown that this factor militates in favor of transfer. Progme also has not demonstrated how the Comcast case, pending in the Eastern District of Pennsylvania, would be tried in the District of Delaware, especially as it has now been dismissed.

### e. Interests of Justice

The interests of justice weigh against transfer. The District of Delaware has no connection to Progme, and no prior experience with the '425 patent. This Court, on the other hand, has experience with the '425 patent, the PTO proceedings, and has invested judicial resources in both the Fox Case and the Google Case. In addition, Progme's allegations of infringement are based on a theory of "infringing activities nationwide," ECF No. 18 in the Fox Case, PageID.410, so Delaware is of no particular significance. Progme has not shown that its initial choice of forum in the Eastern District of Michigan should be disturbed. The Court denies the request to transfer.

**D. Leave to Amend**

Progme requests that if the Court declines to transfer the cases, leave to amend the complaint should be granted to incorporate the reissuance of the '425 patent. Fox does not oppose this request other than to require that Progme be instructed to identify with particularity the accused devices and infringing activity. Fox suggests that if the amended complaint merely substitutes the '425 patent with the reissue patent number, it will suffer from failing to meet the basic pleading requirements, and the amendment will be futile. Google opposes granting Progme leave to amend, arguing that the complaint cannot withstand a motion to dismiss because of Progme's inequitable conduct.

The complaint is not a model of clarity. Fox's concern that if Progme files an amended complaint in a similar form, it will not withstand a motion to dismiss is well-founded. Google's concern regarding inequitable conduct raises an issue that requires more robust briefing and consideration of matters outside the pleadings. Under the circumstances of the case and in keeping with the rule that leave should be freely granted, the Court finds that the better course is to permit amendment. Both Fox and Google will have the right to file any motion they deem appropriate following the filing of the amended complaint.

The Court grants Progme's request for leave to amend the complaint.

**V. CONCLUSION**

Accordingly, for the reasons stated above,

IT IS HEREBY ORDERED that Progme's Motions to Lift the Stay and Transfer or, in the Alternative, for Leave to File an Amended Complaint [ECF No. 18 in the Fox Case and ECF No. 15 in the Google Case] are GRANTED IN PART and DENIED IN PART.

*7 IT IS FURTHER ORDERED that Progme's Motion to Lift Stay is GRANTED; Progme's Motion to Transfer is DENIED; and Progme's Motion for Leave to Amend the Complaint is GRANTED.

IT IS FURTHER ORDERED that Progme shall file an amended complaint within twenty days of this Order.

IT IS ORDERED.

**All Citations**

Slip Copy, 2020 WL 1445808

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 7367424
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

UNITED STATES of America, Plaintiff,

v.

CURRENCY $96,770, Defendant,
Doru Bobby Moise & Roma Harvest
International Ministries, Claimants.

Case No. 16-cv-11185
|
Signed 12/20/2016

**Attorneys and Law Firms**

Philip A. Ross, U.S. Attorney's Office, Detroit, MI, for
Plaintiff.

Alaleh Kamran, Law Offices of Alaleh Kamran, APC,
Encino, CA, for Claimants.

## OPINION AND ORDER DENYING CLAIMANTS' MOTION TO TRANSFER VENUE [18] AND DENYING CLAIMANTS' MOTION FOR A PROTECTIVE ORDER [17]

Hon. Gershwin A. Drain, United States District Judge

### I. INTRODUCTION

\*1 On April 1, 2016, Plaintiff United States of America
("the Government") filed a Complaint for Forfeiture,
based on currency seized by officers at the Detroit
Metropolitan Airport. Dkt. No. 1, pp. 1–2 (Pg. ID No. 1–2).
Thereafter, Claimants Doru Bobby Moise and Roma Harvest
International Ministries received four extensions to file claims
and answers to the Complaint. *See* Dkt. No. 4–11.

On November 16, 2016, Claimants filed a Motion for a
Protective Order, Dkt. No. 17, and a Motion to Transfer Case
to the United States District Court for the Central District of
California, pursuant to 28 U.S.C. § 1404(a), Dkt. No. 18.

These motions are fully briefed and a hearing was held on
December 19, 2016. For the reasons discussed herein, the

Court will **DENY** Claimants' Motion to Transfer Venue [18]
and **DENY** Claimants' Motion for a Protective Order [17].

### II. BACKGROUND

On November 5, 2015, a United States Department
of Homeland Security, Customs and Border Protection
("Customs") officer was conducting outbound currency
inspections at the Detroit Metropolitan Airport in Romulus,
Michigan. Dkt. No. 1, p. 24 (Pg. ID No. 4). Afrodita
Chiciu and her traveling companion, Ana Rios, were ticketed
passengers on Delta Airlines Flight No. 98 traveling to
Paris, France with a final destination to Romania. *Id.* A
Customs officer approached Chiciu and Rios for purposes
of conducting a currency inspection. *Id.* The first time that
the Customs officer asked Chiciu how much money she was
transporting, Chiciu responded that she had $10,000. *Id.*

The Customs officer then referred Chiciu and Rios to
secondary inspection to search their persons and baggage
more thoroughly. *Id.* Chiciu then professed a lack of
knowledge with the English language. *Id.* During secondary
inspection, Rios provided translation assistance to Chiciu.
*Id.* Customs officers explained the currency reporting
requirements to Rios, who acknowledged that she understood
the requirements, and then Rios translated the U.S. currency
requirements to Chiciu. *Id.* Chiciu affirmed her understanding
of the currency reporting requirements and restated to
Customs officers that she was transporting $10,000. *Id.* at 4–
5.

Customs officers asked Chiciu to clarify her previous
response, and Chiciu stated she had "a little more"
than $10,000. *Id.* at 5. When Customs officers asked
Chiciu to specify the exact amount of currency in her
possession, she verbally declared $30,000. *Id.* Following the
verbal declarations, Customs officers presented Chiciu with
Financial Crimes Enforcement Network ("FINCEN") Form
No. 105. *Id.* On that form, Chiciu changed her previous
declarations and made a written declaration in the amount of
$90,000. Rios declared $500.00 in writing on FINCEN Form
No. 105. *Id.*

Customs officers then examined the carry-on bags belonging
to Rios and Chiciu. *Id.* Inside Rios's carry-on bag, Customs
officers discovered $26,500, which was not properly reflected
on Rios's currency reporting document. *Id.* Inside Chiciu's
carry-on bag, Customs officers discovered $96,770, which

was not properly reflected on Chiciu's reporting document. *Id.* The Government alleges that once the currency was discovered, Chiciu became very agitated and told Customs officers that she has high blood pressure. *Id.* Customs then provided Chiciu with an airport wheelchair, which she accepted, although she declined the Customs' offer to seek medical attention on her behalf. *Id.* Minutes later, Chiciu allegedly abandoned the wheelchair, picked up her belongings, and began talking excitedly to Rios in Romani. *Id.* at 5–6.

\*2 A Customs supervisory officer notified Delta Airlines personnel that Rios and Chiciu would not be flying on Delta Airlines Flight No. 98 and requested that their checked in luggage be removed from the plane and taken directly to the Federal Inspection Station. *Id.* at 6. Chiciu and Rios were escorted to the Federal Inspection Station for further investigation. *Id.* While there, Chiciu and Rios initially denied to Customs officers that Chiciu had given Rios any currency. *Id.* After further questioning, Chiciu and Rios changed their original explanation and told Customs officers that while they were traveling to the airport, Chiciu gave Rios $10,200 to carry in her possession. *Id.*

Based on the inspection and inconsistent statements made by Chiciu and Rios, Customs officers determined that both passengers were attempting to transport $123,270 in U.S. Currency from the United States to Romania. *Id.* Customs officers returned $3,270.00 to Rios for humanitarian reasons. Officers seized the remaining $120,000 for failure to accurately report the transportation of currency pursuant to 31 U.S.C. § 5316(a)(1). *Id.* The Government does not seek forfeiture of the $26,500 in United States Currency seized from Rios. *Id.*

### III. DISCUSSION

#### A. Claimants' Standing
The Court must first address the issue that the Government raised in its response briefs. *See* Dkt. No. 20, pp. 18–21 (Pg. ID No. 287–90). The Government contends that Claimants' factual assertions are unsupported by the record and that "[t]heir tie to the defendant currency remains speculative." *Id.* at 21. Thus, according to the Government, because Claimants have not yet demonstrated standing to contest the forfeiture, the issues presented to the Court are not ripe for a decision. *See id.*

In order to contest a governmental forfeiture action, claimants must have statutory standing through compliance with Rule C(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as well as the Article III standing required for any action brought in federal court. *See United States v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir. 1990). Rule C(6) provides:

> The claimant of property that is the subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action. If the claim is made on behalf of the person entitled to possession by an agent, bailee, or attorney, it shall state that the agent, bailee, or attorney is duly authorized to make the claim.

*Id.*

For Article III standing, "a claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497 (6th Cir. 1998). "Article III's standing requirement is thereby satisfied because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *Id.* To establish standing, claimants need only claim a facially colorable interest in the seized property, not prove the merits of their underlying claim. *Id.* at 487–98.

An ownership interest is the most obvious type of interest in seized property that constitutes a colorable claim. *Id.* at 498. However, "[a] property interest less than ownership may also be sufficient to create standing." *Id.* Even possessory interests may be sufficient to bestow standing to contest a forfeiture. *Id.* Nevertheless, "naked possession" claims are insufficient to establish standing. *Id.* Instead, claimants

must provide some explanation or contextual information regarding their relationship to the seized property. *Id.* Factual allegations should include how the claimants came to possess the property, the nature of the claimants' relationship to the property, and/or the story behind the claimants' control of the property. *Id.*

**\*3** To contest a forfeiture action, claimants bear the burden of demonstrating an interest in the seized item sufficient to satisfy the Court of their standing as claimants. *Id.* However, the Sixth Circuit has "decline[d] to adopt any type of hard-and-fast requirement for the initial evidentiary showing necessary for standing." *Id.*

The Government may challenge whether claimants' interest in defendant property is sufficient to confer standing by questioning the claimants' factual allegations and developing information through interrogatories to determine whether the claimants have a real interest in the property. *Id.* at 499. Article III merely requires that claimants allege a personal stake in the controversy's outcome, such as an actual or threatened injury. *Id.*

Here, Claimants have taken the essential step of asserting a property interest in the defendant currency. The question then becomes whether Claimants have provided sufficient proof of their property interests to establish standing so that their motions may be properly considered. The Court will consider pleadings, answers to interrogatories, and admissions in the file.

In its Complaint, the Government alleged that $96,770 in United States Currency was seized by officers of the United States Department of Homeland Security, Customs and Border Protection ("Customs") on November 5, 2015 at the Detroit Metropolitan Airport in Romulus, Wayne County, Michigan. Dkt. No. 1, p. 2 (Pg. ID No. 2). The Government also alleges in its Complaint that the money was seized from Chiciu because she failed to accurately report the transportation of currency pursuant to 31 U.S.C. § 5316(a)(1) while attempting to transport $123,270 in U.S. Currency from the United States to Romania. *Id.* at 3.

In their filings, Claimants assert that they own the entirety of the defendant currency, which they raised from charitable donations. Dkt. No 17-3, p. 4 (Pg. ID No. 150). The funds were allegedly earmarked to renovate a church and support local missionaries in Romania. *Id.* Claimants further allege that Chiciu was Claimants' bailee. *Id.*

Claimants have filed a Seized Asset Claims Form and have pled sufficient allegations to establish a personal stake in the controversy's outcome. Further, the Government has not suggested any conceivable alternative owners of the currency who have filed claims. In the Court's estimation, Claimants' assertion of ownership and explanation of Chiciu's possession of the currency, together with their answer to the Government's Complaint and compiled exhibits, are sufficient to establish their standing. [1]

1    The Government notes that Claimants filed only an unsworn affidavit in support of their allegations of ownership. Dkt. No. 20, p. 17 (Pg. ID No. 286). However, the Seized Asset Claim Form Claimants' counsel submitted as part of Claimants' reply briefs does appear to be properly sworn according to Department of Justice claim form templates. *See* Dkt. No. 25-5, p. 2 (Pg. ID No. 476); http://www.forfeiture.gov/Claim% 20Form % 20(PDF).pdf. Thus, the Court will consider this declaration in its decision.

The facts pled by Claimants, while not conclusively establishing Claimants' ownership of the currency, are sufficient to demonstrate facially colorable claims to the property. Accordingly, the Court finds that Claimants have sufficient standing under Rule C(6) and Article III to contest the forfeiture.

**B. Claimants' Motion to Transfer Venue**
**\*4** Next, the Court will address Claimants' motion seeking to have the case transferred to the United States District Court for the Central District of California. Dkt. No. 18. The Government objects to Claimants' motion. Dkt. No. 20.

Generally, venue for a civil action is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial

United States v. Currency $96,770, Not Reported in Fed. Supp. (2016)

2016 WL 7367424

district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A forfeiture action may be brought in "(A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute." 28 U.S.C. § 1355(b)(1). Pursuant to section 1395, the venue of a forfeiture action is also proper in the district where the claim accrues or the defendant is found, or where the property is found or brought. 28 U.S.C. § 1395(a)–(c).

Title 28, United States Code, Section 1404(a) governs change of venue and provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The transfer statute grants district courts broad discretion to determine when a transfer of venue is appropriate. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). The moving party bears the burden of proving by a preponderance of the evidence that the court should transfer the action. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003).

The district to which the movant proposes transfer must be one in which the case could have been properly brought. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Once the movant meets this threshold requirement, "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

This district has interpreted that the following factors should be considered:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical

> problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice.

**\*5** *Grand Kensington, LLC v. Burger King Corp.*, 81 F. Supp. 2d 834, 836 (E.D. Mich. 2000). Public interest factors generally include the following considerations: "(i) the enforceability of the judgment; (ii) practical considerations affecting trial management; (iii) docket congestion; (iv) the local interest in deciding local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable state law." *United States v. Currency $41,180.97 In the Form of Charter One Citizens Bank Official Check No. 500735627-8*, No. 13-CV-14274, 2014 WL 4374372, at \*3 (E.D. Mich. Sept. 4, 2014) (quoting *Steelcase, Inc v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720 (W.D. Mich. 2004); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995)).

Courts also consider Plaintiff's choice of forum as a significant factor when balancing the parties' interests. *See id.*; *Van Dusen*, 376 U.S. at 633–34 ("There is nothing, however, in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue.").

### 1. Whether the Case Could Have Been Properly Brought in the Central District of California

It is undisputed that venue properly lies in the Eastern District of Michigan under 28 U.S.C. § 1391(b) or 28 U.S.C. § 1355.

However, Claimants assert that the case could have been brought in the Central District of California under 18 U.S.C. § 981(h), which states:

> In addition to the venue provided for in section 1395 of title 28 or any other provision of law, in the case of property of a defendant *charged with a violation that is the basis for forfeiture of the property* under this section, a proceeding for forfeiture under this section may be brought in the judicial

Case 2:20-cv-12933-GAD-KGA ECF No. 30-1, PageID.355 Filed 11/02/21 Page 28 of 31

United States v. Currency $96,770, Not Reported in Fed. Supp. (2016)

2016 WL 7367424

district in which the defendant owning
such property is found or in the
judicial district in which the criminal
prosecution is brought.

18 U.S.C. § 981(h) (emphasis added); Dkt. No. 25, p. 6 (Pg.
ID No. 414). Section 981(h) is inapplicable to the instant
proceedings because the present case is not one in which "a
defendant [was] charged with a violation that is the basis
for forfeiture of the property." *Id. See also Contents of
Account No. 03001288 v United States*, 344 F.3d 399, 404
(3d Cir. 2003) (noting that Section 981(h) grants venue "in the
district where a related criminal action is pending"); *United
States v Akers*, 215 F.3d 1089, 1107 (10th Cir. 2000) (noting
that section 981(h) provides jurisdiction in relation to other
criminal proceedings). There is no evidence in the record that
Chiciu was charged with a criminal violation in relation to the
improperly reported currency. Section 981(h) does not apply
to Claimants' case.

Additionally, it is unclear whether jurisdiction would properly
lie in the Central District of California under 28 U.S.C. §
1391(b) or 28 U.S.C. § 1355. Los Angeles was the initial
departure point in Chiciu's flight to Romania; however, it
was not the act of flying with a large amount of currency
that gave rise to the forfeiture in the present case. Rather, it
was Chiciu's failure to file a valid report when exporting the
currency outside of the United States. 31 U.S.C. § 5316(a)
(1) ("[A] person or an agent or bailee of the person shall
file a report under subsection (b) of this section when the
person, agent, or bailee knowingly—(1) transports, is about
to transport, or has transported, monetary instruments of more
than $10,000 at one time—(A) from a place in the United
States to or through a place outside the United States"). The
point at which the violation giving rise to forfeiture occurred
was when Chiciu knowingly was about to transport more than
$10,000 from a place in the United States to a place outside
of the United States without filing a proper report. Detroit
Metropolitan Airport was the point at which she was advised
of the currency reporting requirements, the place at which she
lied on the currency report, and the last domestic leg in her
travels prior to landing in Paris, France.

*6 It is far from clear that "a substantial part of the events
or omissions giving rise to the claim occurred" in the Central
District of California. Claimants have not alleged that Chiciu
failed to file a truthful report about her knowing transport of
currency in Los Angeles, as it is unclear whether she was

required to file the report at the first, domestic leg of her
flight. *See* 31 U.S.C. § 5316 ("A report under this section shall
be filed at the time and place the Secretary of the Treasury
prescribes.").

Even if the Court were to assume that "a substantial part of
the events or omissions giving rise to the claim occurred" in
the Central District of California, a balance of the interests
in this case indicates that venue should remain in the Eastern
District of Michigan.

### a. Convenience of the Parties

When balancing the private interests of the parties in
this litigation, the Court weighs seven factors. *See Grand
Kensington*, 81 F. Supp. 2d at 836. First, the Court considers
the convenience of the parties. *Id.* Claimants argue that the
convenience of the parties favors transferring this case to
California where Claimant Moise is a resident and where
Claimant Roma is based. Dkt. No. 18, p. 12 (Pg. ID No.
259). The Government asserts that it is only authorized
to appear on behalf of the United States in this district,
and that authorization would be needed from the United
States Attorney for the Central District of California to
continue representation there. Dkt. No. 20, p. 13 (Pg. ID
No. 282). While Claimants may be inconvenienced by
continuing the case in this proper forum, the Government
may be inconvenienced by transferring the case to California.
Accordingly, the parties' inconvenience does not weigh
strongly in favor of, or against, Claimants' motion. Any
inconvenience that Claimants may experience is insufficient
to overcome the presumption in favor of Plaintiff's choice of
venue.

### b. Convenience to the Witnesses

Second, the Court considers the convenience of the witnesses.
*See Grand Kensington*, 81 F. Supp. 2d at 836. "Witnesses'
convenience is one of the most important factors in
determining whether to grant a motion to change venue under
§ 1404(a)." *Thomas v. Home Depot, U.S.A., Inc*, 131 F. Supp.
2d 934, 937 (E.D. Mich. 2001). Claimants assert that this
factor favors transfer because all of their witnesses, including
Chiciu, Rios, and Claimant Moise, reside in California. Dkt.
No. 18, pp. 12–13 (Pg. ID No. 259–60). Additionally, in
the event that Claimant's charitable donors must be asked
to testify, Claimants state that all their donors are located

United States v. Currency $96,770, Not Reported in Fed. Supp. (2016)
2016 WL 7367424

in California. *Id.* at 14. Claimants do not provide an outline of the material that their key witnesses will provide, which undermines their position because "[o]nly when the Court is armed with such information can it properly assess the convenience of the witnesses." *Home Depot*, 131 F. Supp. 2d at 937 (citation omitted).

Meanwhile, the Government anticipates calling multiple witnesses involved in the currency seizure, all of whom reside and are employed in Michigan. Dkt. No. 20, p. 13 (Pg. ID No. 282). Given that multiple witnesses reside in both the Central District of California and the Eastern District of Michigan, this factor does not weigh in favor of transfer.

Additionally, Claimants allege that the cost of flying multiple witnesses to Michigan would render their case "more challenging." Dkt. No. 18, pp. 14 (Pg. ID No. 261). The Court may consider the "the relative financial strength of the parties," but such a consideration should be substantiated with evidence. *See Home Depot*, 131 F. Supp. 2d at 937. Here, Claimants have not produced any documentation for the Court to find that traveling to Michigan would pose a significant financial hardship. Therefore, the Court does not place great weight on this consideration.

*7 Claimants also argue that their counsel is located in California. Dkt. No. 18, p. 14 (Pg. ID No. 261). This fact does not weigh in favor of transfer because convenience of counsel is not a factor to be considered when ruling on motion for transfer. *See Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered."); *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."). Although the Sixth Circuit has not yet enunciated this rule, this rule is sensible and observed by circuit and district courts nationwide —including this district—so the Court will follow it. *See Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 633 (W.D. Mich. 2009) (collecting cases); *Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 395 (E.D. Mich. 1982) ("[T]he convenience of counsel is not a relevant factor under 28 U.S.C. § 1404(a).").

### c. Ease of Access to Sources of Proof

Third, the Court considers the relative ease of access to sources of proof. *See Grand Kensington*, 81 F. Supp. 2d at 836. Claimants assert that any sources of proof could be transferred electronically, but does not specifically identify any sources of proof to demonstrate convertibility to electronic means. *See* Dkt. 18, p. 15 (Pg. ID No. 262). Accordingly, given the lack of evidence presented by either party on this issue, the Court does not find that this factor weighs in favor of or against transfer.

### d. Availability of Process to Compel Attendance of Unwilling Witnesses

Fourth, the Court considers the availability of process to compel the attendance of unwilling witnesses. *See Grand Kensington*, 81 F. Supp. 2d at 836. As neither party has alleged that there are unwilling witnesses in the present case, the Court does not find that this factor should be considered in the present balancing.

### e. Cost of Obtaining Willing Witnesses

Fifth, the Court considers the cost of obtaining willing witnesses. *See Grand Kensington*, 81 F. Supp. 2d at 836. Neither party has made arguments specifically on this point, and the Court addressed monetary considerations in the witness convenience section above. Accordingly, this factor does not weigh in favor of or against transfer.

### f. Efficiency and Expense

Sixth, the Court considers where the case can be tried more expeditiously and inexpensively. *See Grand Kensington*, 81 F. Supp. 2d at 836. Claimants argue that efficiency would be favored by a transfer to the Central District of California because the average resolution time in that district is 19.8 months, compared to 29.6 months in the Eastern District of Michigan. Dkt. No. 18, p. 16 (Pg. ID No. 263). It is notable that in this case, Claimants delayed case progression by more than six months by seeking, and receiving, four separate extensions to file a response. *See* Dkt. No. 4–11. It was only after the Court refused to grant any further extensions did Claimants finally file an answer in October 2016. *See* Dkt. No. 11, 14. The Court does not believe that parties should be incentivized into creating extended delays to buttress support

for motions to transfer. Accordingly, this factor should not weigh in favor of transfer.

### g. Interests of Justice

Seventh, the Court considers the interests of justice, which includes whether the administration of justice will be advanced by a transfer. *See Grand Kensington,* 81 F. Supp. 2d at 836. Both districts are familiar with and capable of deciding the issues and law presented in this case.

Additionally, the Governments choice of forum is a significant factor when balancing the parties' interests. *Van Dusen,* 376 U.S. at 633–34. Specifically, the Government has an interest in trying this case where the acts giving rise to forfeiture occurred and where its witnesses are located. Although Claimants reside in California, and trying the case in Michigan may cause them some inconvenience, the balance of interests does not strongly weigh in their favor. In sum, they have not overcome the presumption afforded in favor of a plaintiff's choice of forum.

**\*8** Accordingly, Claimants' Motion for Change of Venue [18] is **DENIED**.

### C. Claimants' Motion for a Protective Order

In Claimants' second motion, they seek a protective order pursuant to Rule 26 of the Federal Rules of Civil Procedure. Dkt. No. 17.

Under Rule 26(c), the party seeking a protective order bears the burden of persuasion. *See Lewis v. St. Luke's Hosp. Ass'n,* 132 F.3d 33, at \*4 (6th Cir. 1997) (unpublished); *Waelde v. Merck, Sharp & Dohme,* 94 F.R.D. 27, 28 (E.D. Mich. 1981). The moving party must show good cause by demonstrating a particular need for protection. *Lewis,* 132 F.3d at \*4. "Broad allegations of harm unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)).

In a forfeiture proceeding, the Government may commence limited discovery immediately after a verified claim is filed. Supplemental Rule G(6)(a) provides that "[t]he government may serve special interrogatories limited to the claimant's identity and relationship to the defendant property without the

court's leave at any time after the claim is filed and before discovery is closed." The purpose of the rule is "to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing." Supp. R. G advisory committee's note (subdivision (6)). The claimant must respond to these special interrogatories within 21 days. Supp. R. G(6)(b). The general civil discovery rules of the Federal Rules of Civil Procedure otherwise apply. Supp. R. G(1).

In the present case, Claimants present only a broad allegation of possible harm, lacking the particularity that must be shown for the issuance of a protective order. Claimants allege that the Government seeks to use information from the Interrogatories to develop other charges, citing to the Government's response brief. Dkt. No. 26, p. 7 (Pg. ID No. 485). However, Claimants have not specified what harm they will experience in the absence of a protective order. Accordingly, Claimants have not demonstrated a particular need for protection.

Furthermore, Rule 5.2 of the Federal Rules of Civil Procedure already protects much of what Claimants argue must be covered by a protective order. FED. R. CIV. P. 5.2(a) (requiring the following information to be redacted from filings before the Court: (1) the last four digits of the social-security number and taxpayer-identification number; (2) the year of the individual's birth; (3) the minor's initials; and (4) the last four digits of the financial-account number.).

Having reviewed the Supplemental Rules and the Government's Interrogatories, the Court finds that the Interrogatories served upon Claimants fall sufficiently within Supplemental Rule G(6)'s requirement that such interrogatories be "limited to the claimant's identity and relationship to the defendant property." Supp. R. G(6)(a).

### IV. CONCLUSION

For the reasons stated herein, the Court will **DENY** Claimants' Motion to Transfer Venue [18] and **DENY** Claimants' Motion for a Protective Order [17].

**\*9** IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2016 WL 7367424

**United States v. Currency $96,770, Not Reported in Fed. Supp. (2016)**
**2016 WL 7367424**

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.